Good morning, Your Honor. Attorney Glenn Formica for Mr. Farfan, Mr. Coelho. Your Honor, I think one of the initial questions the Court may have of both parties, but perhaps particularly of me, is what type of discretion are we challenging? And that, as the Court's aware, discretion is much like ice cream, it comes in a lot of flavors. But I think the three types of discretion applicable with the Immigration Act would be, you know, certainly prosecutorial discretion, judicial discretion, administrative discretion. And I think this case really raises a fourth type of discretion, which is statutory discretion. And I say statutory discretion because the discretion that's offered the Attorney General in 245A or 1255A, I should mention parenthetically, I apologize for going back and forth between the INA and the Code. But under 1255A, the language is very clear, it says, the status of an alien who is inspected and admitted or paroled into the United States, and then there's an ellipse, may be adjusted by the Attorney General, may be adjusted in his discretion and under such regulations as he may prescribe to that of an alien lawfully admitted. And then immediately following are the three conditions, application for such adjustment, eligible to receive an immigrant visa, and an immigrant visa is immediately available. Looking at that in isolation, and I understand the prevailing view is that as soon as most courts see the words in his discretion, and certainly the government would argue that that basically leaves everything else to the Attorney General to decide. And I don't think it does, Your Honor. And our argument here is that it doesn't, because that would effectively be giving, that would be Congress giving a legislative pen to the executive. And I think when you take that section, 1255A, and you compare to its counterpart under 1104A, and these, by the way, Your Honor, are both found at pages, well, 12 and 13 and 14 of our opening brief. The Secretary of State shall be charged, shall, not may, but shall be charged with the administration enforcement of the provisions of this chapter. And then it goes on to talk about, accept those powers, duties, and functions conferred upon consular officials relating or granting to refusal of visas. So there's no discretion with the Secretary of State, at least under that section, to admit or not admit somebody. And one of our initial premises, Your Honor, is that under 245A, if you're just looking at what the text says, what that text is referring to is saying, listen, if you're here in the United States, we're not going to make you board an airplane, fly back to wherever you're from, schedule a consulate interview, and then adjust your, or not adjust your status, but obtain your visa, which is a difference, obviously, to come back into the United States. That's the Attorney General's discretion. That would be our initial argument. Because if you're just reading the plain language of the text, that's what it's saying. It's saying, if you're here, the Attorney General can decide whether to give you your status or your visa here in the United States. And just, I think the Court's well aware, a visa is something that's granted by the Secretary of State under a separate section of the Act. And adjusting the status is you're here on one status and you're changing it. And that's something that's done by USCIS, the Domestic Agency for Adjustment. So that's where we see that discretion is applied. Now, in this case, Your Honor, the immigration judge took his- How do you, how do you respond to the argument that your view is in tension with this Court's 2006 decision in Rodriguez versus Gonzalez, which seems to at least imply that the relevant discretion is the ability to deny applications on grounds apart from inadmissibility? So, Your Honor, you know, the proverbial gulp in my throat, I would just say the Court got it wrong. And I would also add, Your Honor, other courts have followed that line of reasoning. But I think it's- You are aware of the fact that you are aware of the fact that we're bound by that decision absent a non-bonk reversal of that conclusion. So telling us that we got it wrong doesn't give us any, doesn't help us at all.  No, I understand that, Your Honor. And, you know, I think, you know, and I'm not wiggling here. But I don't know other than that. Go ahead. Well, you know, and I'm not trying to wiggle. But I do think the Court got it wrong. And I understand, you know, we have a non-bonk procedure. You're proud of your view, but you don't have a vote. Fair enough, Your Honor. I know I don't have a vote. But, and I'm not trying to wiggle when I offer this, because I think it's very specific to this case. And frankly- Are you agreeing with Judge Gadsden that we're bound by it? Your Honor, I do agree that you're- Are you also agreeing with him that it's fatal to your position? I wasn't suggesting it's fatal. I was just asking him to let us know how we reconcile the tension. Okay. No, I hear you, Your Honor. I think if- So here's where I'm wiggling. But I think it's a legitimate distinction. So on the one hand, yes, you know, you're bound by that decision. I'm not going to dispute that. And if you look at this as a view of this section of the statute, and if you'll notice in my brief, you know, I anticipated that concern. What I'm relating this to is that under 1182, which are the inadmissibility portions of the statute, what you have here is discretion by the immigration judge, where he is looking to say, even though your crime isn't listed, I can still declare your crime inadmissible. And I think that's an important distinction from prior precedent. Counselor, this is Judge Walker. I don't think the judge is doing that. The judge is saying we have certain specific crimes. And if those are committed, then you're not eligible to even get started with before the IJ and convince the IJ of your situation. But once you get past that, the IJ has discretion to take into account the past history of the petitioner and the merits and demerits of that person's life and whether the person should be admitted as a matter of discretion. That's all this case is about. No, I think it's about more than that, Your Honor. And respectfully, Your Honor, I'm not sure that I know where what Your Honor just said, it's held in the statute. And I say that because quite honestly, that's kind of been, you know, my assumption with a lot of cases for 20 something years. You know, well, you know, he has discretion to decide it. But when I look at the statute, you know, took me 20 years to actually read the statute that I've been practicing under. I don't see it. It's just not there. There's nothing that says that discretion under 245A gives the immigration judge just what Your Honor said. And I understand that that's kind of the prevailing view. Frankly, I don't, you know, I couldn't tell you that that hasn't been my prevailing view. But when I turn to the statute, when I start to really break this apart, you know, deconstruct it, it's not there. I mean, I think if you step back from it and ask the question, what was Congress intending? Congress was saying, you know, because when you look at the other part of 245A, Congress is very clear, makes application for such a judgment, is eligible to receive the immigrant benefit, and immigrant visa is immediately available. And then you jump to the other parts of the statutes, which are really the comma but, back when there was a comma but, the comma but is unless you're subject to one of these crimes. So I, and I think that's the distinction with this court's prior holding, because it's not necessarily the same case here. I don't think the immigration judge is allowed to use his discretion here to decide whether to adjust somebody or not, to go over to that list of inadmissible crimes and say, yeah, it's not on that one. But I just think you're not a person of, you know, I just don't think I should use discretion to admit you here because, you know, you did X, Y, and Z. And I think that creates an inherently arbitrary system if that is the case, because you'll have to distinguish. You'll have three minutes in rebuttal. Thank you, Your Honor. Mr. Tucker. Thank you. And may it please the Court, Colin Tucker for the Attorney General. This is a straightforward case in which the agency denied adjustment of status in a permissible exercise of discretionary authority conferred by Congress. The agency determined that the petitioner is statutorily eligible for adjustment, but does not warrant that relief as a matter of discretion in light of his criminal record and the dubious bona fides of his prior marriage. This court's jurisdiction to review that determination is limited to colorable constitutional claims and questions of law, and the questions of law the petitioner raised here are non-starters. First, there is no support anywhere in the law for the petitioner's theory that the agency's discretionary authority should be freely circumscribed in the context of adjustment applications. Second, this court has long endorsed the agency's view that the circumstances surrounding the commission of a crime may be considered as a negative discretionary factor. I know the court is giving us two uninterrupted minutes, but with that having been said, I'm prepared to move directly to questions. Judge Wesley? I have none. Judge Walker? I have none either. This is Judge Kasman. Is there any boundary, is there any limit on what the agency can consider in its discretionary analysis under 1255A? In other words, let's say the agency had denied adjustment of status based on some crime that was committed a long time ago, a minor crime, that any reasonable adjudicator would not consider to reflect on the applicant's present character. Would that be appropriate? Well, Your Honor, in a case where that decision was made by an immigration judge, it would be subject to review for abuse of discretion by the board. In terms of boundaries, you also, of course, have the Constitution itself. An exercise of discretion has to be within the bounds of the Constitution. Beyond that, the particular circumstance you just described could be considered as one factor, one negative equity that would have to be compared against any positive one and combined with any other negative one. Not to do so would at least arguably constitute an error of law that would be reviewable in this court. The agency considered, as I understand it, both the petitioner's original conviction, the conviction which was later vacated, and the later guilty plea to subsequent charge. So my question is, was it error for the agency to rely on the vacated conviction at all? Why shouldn't the agency see the lesser charge to which the petitioner pled guilty, plus the conduct giving rise to it? Well, I think I would push back on the premise of that question, Your Honor. The agency certainly noted the original conviction, but both the immigration judge and the board explicitly acknowledged that that conviction was subsequently overturned. I think that what they focused on here, in addition to the problems with the prior marriage that was the basis for the original adjustment application, is the ultimate convictions as well as the underlying conduct that led to those convictions. And in that sense, no, the agency did not in any sense err by considering those as negative equities. If there are any further questions from anyone? And thank you. Do you have anything you want to add? If not, Mr. Tucker will turn to Mr. Formica for three minutes in rebuttal. I'm prepared to conclude. Thank you, Your Honor. Your Honor, I just draw the court's attention back to Mr. Tucker's arguments are not supported by the statute 245A. And the other thing I would like to draw the court's attention to is that the judge very clearly, and we include this at page 23 of our opening brief, he writes, the immigration judge does, then we have the most important adverse factor, namely the respondent's charges. The record reflects that he was convicted by a jury of sexual assault and risk injury to a minor and given a substantial prison sentence of 14 years. The court finds that any charges involving a minor or sexual assault are very, very serious charges, which the prison term reflected. I mean, he doesn't, you know, right there, despite maybe giving passing acknowledgement that it was overturned substantively on appeal. We addressed that in our brief. He's still looking to that original conviction. And that alone, Your Honor, I think would justify a remand in this case because he clearly did get it wrong. But, you know, I think... Let me ask you this, though. I mean, with respect to the Fisher's statements and his plea colloquy, why doesn't the agency's reliance on the plea colloquy eliminate any concern that the agency relied on an improper finding by the jury? Well, I think, Your Honor, the judge's words himself speak to the fact that that was his argument. So I understand the question and I can even understand the argument. But that's not what the immigration judge wrote. That was not what he put as his concluding sentence. And I would take him at his word. But the most important adverse factor, namely the respondent's charges. So, you know, I think when you link that with this idea that we're just divining, you know, this idea of discretion is being lifted from the statute and, frankly, from a place in the statute that really clearly has another purpose in mind or would appear on its face to have another intended purpose. I think, you know, I think it's pretty clear, you know, this isn't what the statute intended. And I would just mention, sort of as a final comment, is that if an immigration judge can really just look anywhere for this discretionary purpose, then why would Congress bother to put in all these other conditions? It just logically doesn't make sense. Like, Congress really wanted to have a strong hand in the Immigration Act and tell judges exactly what they, how they were to decide things and what, you know, which people they were not allowed to admit. So you take that and then you take an agency, and we include this in our reply brief that is, you know, pretty singular. It's, you know, the immigration judge to the BIA to the attorney general opinions. It's all in one silo as far as this discretion goes. So, you know, I'd respectfully submit, Your Honor, that in this case and, frankly, in many others, that the attorney general doesn't have such a broad and free hand, particularly when it comes to deciding criminal convictions that are not part of 1182. Thank you. Thank you both for your arguments. The court will reserve decision. We'll